[Cite as *State v. Diaz*, 2016-Ohio-55.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 14CA010674 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| AUSTIN DIAZ | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 12CR084977 |

DECISION AND JOURNAL ENTRY

Dated: January 11, 2016

HENSAL, Presiding Judge.

{¶1} Austin Diaz appeals a judgment of the Lorain County Court of Common Pleas that sentenced him to life imprisonment for felony murder and aggravated robbery. For the following reasons, this Court affirms.

I.

{¶2} After they punched out some windows at an elementary school, Mr. Diaz invited C.J. Adams, Michael Cuevas, and another friend to go for a ride in his grandfather's car. Before they left, Mr. Cuevas called his cousin José Torres and asked him to join them. The men first bought some cigars and then went to the house where Mr. Cuevas was living because Mr. Cuevas needed to treat the injuries he sustained while punching through a window.

{¶3} As the four other men sat in the car in the driveway, Mr. Diaz saw Lamar Taylor walking down the street. After he announced that he was going to jump Mr. Taylor, he and Mr. Adams got out of the car and began punching, kicking, and stomping Mr. Taylor. Mr. Torres got

out of the car and told them to stop, but they refused. Mr. Torres decided to get help, but his cellphone was dead, so he ran two blocks to his home and woke up his cousin, who called 911. By the time emergency responders reached Mr. Taylor, he had died from exsanguination.

{¶4} According to Mr. Cuevas, after he took care of his wounds, he went upstairs to the attic where he was living. A short time later, Mr. Diaz and the other friend from the car came up to the attic. Mr. Diaz announced that they had jumped somebody. When Mr. Cuevas asked why, Mr. Diaz told him that they had gotten a cellphone and watch off the victim. Sometime later, officers arrived and arrested the three men.

{¶5} According to Mr. Cuevas, the officers arrested him because they saw blood on him. They released him, however, when they learned that he had not been involved in the attack. The next morning, Mr. Cuevas went to grab a sweater from a coat rack and saw the black hooded sweatshirt that Mr. Diaz had been wearing during the attack. When he picked it up, he noticed that it had some weight to it, so he reached into the pocket and discovered a watch with blood on it. DNA testing indicated that the blood on the watch was Mr. Taylor's. His blood was also found on Mr. Diaz's pants and shoes. Officers also discovered Mr. Taylor's wallet on the dashboard of Mr. Diaz's grandfather's car.

{¶6} The Grand Jury indicted Mr. Diaz for aggravated murder with a death penalty specification, murder, felony murder, aggravated robbery, and felonious assault. A three-judge panel found him guilty of felony murder, aggravated robbery, and felonious assault. At sentencing, the court merged the felony murder and felonious assault offenses and sentenced him to life in prison with the possibility of parole after 15 years. Mr. Diaz has appealed, assigning as error that his convictions are against the manifest weight of the evidence.

3

## II.

### ASSIGNMENT OF ERROR

THE CONVICTIONS OF DEFENDANT-APPELLANT FOR MURDER, AGGRAVATED ROBBERY, AND FELONIOUS ASSAULT WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340.

{¶8} Mr. Diaz does not contest that he was one of the men who attacked Mr. Taylor. He argues that his aggravated robbery conviction is against the manifest weight of the evidence, however, because there was no conclusive evidence that he possessed any of Mr. Taylor's belongings. He notes that Mr. Cuevas did not see him holding any of Mr. Taylor's items and told officers that it was Mr. Adams who had Mr. Taylor's watch and wallet. Mr. Cuevas also did not know how the watch got into Mr. Diaz's sweatshirt. Mr. Diaz also notes, although the watch had traces of his DNA, it also contained traces of the DNA of two unknown persons. Mr. Diaz further notes that no one tested Mr. Taylor's possessions for fingerprints.

{¶9} According to Mr. Cuevas, when he asked Mr. Diaz why he attacked Mr. Taylor, Mr. Diaz answered that he had gotten a cellphone and watch off of him. Although Mr. Cuevas admitted that he initially told officers that it was Mr. Adams who took Mr. Taylor's possessions, he explained that it was because he had not seen Mr. Diaz carrying anything when Mr. Diaz came up to the attic of the house. Once he returned home, however, he found the sweatshirt that Mr. Diaz had been wearing that contained Mr. Taylor's watch.

{¶10} As Mr. Diaz has noted, Mr. Taylor's watch contained traces of his DNA. Police also recovered Mr. Taylor's wallet in Mr. Diaz's grandfather's car. Upon review of the record, we conclude that, in light of those facts as well as Mr. Diaz's admission to Mr. Cuevas, we cannot say that the three-judge panel clearly lost its way when it found Mr. Diaz guilty of aggravated robbery.

{¶11} Mr. Diaz also argues that his conviction for felony murder is against the manifest weight of the evidence because there was no evidence that it was his blows that delivered fatal injury to Mr. Taylor. He notes that it was Mr. Adams who Mr. Torres said delivered a "field goal" style kick to Mr. Taylor's head. He also notes that Mr. Torres testified that he did not see Mr. Diaz stomp on Mr. Taylor's head. He further notes that there was less blood on his shoes than Mr. Adams's shoes.

{¶12} The State did not have to prove that Mr. Diaz inflicted the fatal blow to convict Mr. Taylor of felony murder. "[A] defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission * * *." *State v. Herring*, 94 Ohio St.3d 246, 251 (2002). "To support a conviction for complicity by aiding and abetting * * * the evidence must show that the defendant supported, assisted, encouraged, cooperated with,

advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶13} The evidence established that it was Mr. Diaz's idea to attack Mr. Taylor and that he and Mr. Adams were both vigorous participants in the assault. Accordingly, the record supports Mr. Diaz's conviction for felony murder, notwithstanding whether it was he or Mr. Adams who inflicted the fatal injuries. *State v. Gray*, 9th Dist. Summit No. 27365, 2015-Ohio-1248, ¶ 40. We, therefore, conclude that Mr. Diaz's convictions are not against the manifest weight of the evidence. Mr. Diaz's assignment of error is overruled.

III.

{¶14} Mr. Diaz's convictions are not against the manifest weight of the evidence. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.

APPEARANCES:

MICHAEL J. DUFF, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.